UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 23-mj-8106-RMM

UNITED STATES OF AMERICA,

                                           Plaintiff,

vs.

RAYMOND SAUNDERS, and
CARLOS RODRIGUEZ-RODRIGUEZ,

                                          Defendants.
_____/

**CRIMINAL COVER SHEET**

1.      Did this matter originate from a matter pending in the Miami Office of the United States Attorney's Office prior to July 20, 2008?

         Yes         X **No**

2.      Did this matter originate from a matter pending in the Northern Region of the United States Attorney's Office (West Palm Beach Office) only prior to December 18, 2011?

         Yes         X **No**

3.      Did this matter originate from a matter pending in the Fort Pierce Office of the United States Attorney's Office prior to August 8, 2014?

         Yes         X **No**

                                         Respectfully submitted,

                                         MARKENZY LAPOINTE
                                         UNITED STATES ATTORNEY

BY: _____
                                         JOHN C. McMILLAN
                                         ASSISTANT UNITED STATES ATTORNEY
                                         Admin. No. A5500228
                                         500 S. Australian Ave., Suite 400
                                         West Palm Beach, FL 33401
                                         Office:     (561) 820-8711
                                         John.mcmillan@usdoj.gov

AO 91 (Rev. 08/09) Criminal Complaint

# UNITED STATES DISTRICT COURT
### for the
### Southern District of Florida

| | |
|---|---|
| United States of America <br> v. <br> RAYMOND SAUNDERS, <br> and <br> CARLOS RODRIGUEZ-RODRIGUEZ, <br><br> *Defendant(s)* | ) <br> ) <br> ) Case No.  23-mj-8106-RMM <br> ) <br> ) <br> ) |

FILED BY_____SW_____D.C.

Feb 27, 2023

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - WPB

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __02/22/2023__ in the county of __Palm Beach and Martin__ in the __Southern__ District of __Florida, and elsewhere__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 8 U.S.C. §§ 1324(a)(1)(A)(i), 1324(a)(1)(A)(v)(I)-(II), 1324(a)(1)(B)(i); <br> 8 U.S.C. §§ 1326(a)(2); and <br> 8 U.S.C. § 1327 | Alien Smuggling for Purposes of Commerical Advanture of Private Finanancial Gain; <br> Reentry After Deportation; and <br> Knowingly Aiding or Assisting a Previously Removed Aggravated Felon to Enter the United States (defendant SAUNDERS only) |

This criminal complaint is based on these facts:
See attached Affidavit

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Joshua Woodbury, Special Agent, HSI
*Printed name and title*

Subscribed and sworn to before me in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone (Facetime).

Date: __02/27/2023__

_____
*Judge's signature*

City and state: __West Palm Beach, Florida__   Hon. Ryon M. McCabe, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT
### Case No. 23-mj-8106-RMM

I, Joshua Woodbury, first being duly sworn, does hereby depose and state as follows:

1. I am a Special Agent with the United States Department of Homeland Security, Homeland Security Investigations ("HSI") and have been so employed since June 2008. Prior to my employment with HSI, I worked as a United States Customs Inspector for six and a half years. As part of my duties and responsibilities as an HSI Special Agent, I have become familiar with the criminal offenses set forth in Title 8 of the United States Code, the Immigration and Nationality Act. Moreover, I have conducted investigations involving human smuggling and their related criminal activity and have become familiar with the methods and schemes employed by individuals who smuggle persons into the United States.

2. The facts set forth in this affidavit are based on my personal knowledge, information obtained from others, including other law enforcement officers, my review of documents, pictures, GPS data, text messages and computer records. Because this affidavit is being submitted for the limited purpose of establishing probable cause to support a criminal Complaint, I have not included each and every fact known to me and law enforcement, rather, I have included only those facts necessary to establish probable cause to charge that on or about February 22, 2023, in the Southern District of Florida, and elsewhere, defendants RAYMOND SAUNDERS (hereinafter "SAUNDERS") and Carlos RODRIGUEZ-RODRIGUEZ (hereinafter "RODRIGUEZ") with: (a) Knowingly bringing or attempting to bring, unauthorized aliens to or into the United States at a place other than a designated port of entry, in violation of Title 8, United States Code, Sections 1324(a)(1)(A)(i), 1324(a)(1)(A)(v)(I)-(II), and 1324(a)(1)(B)(i)(for purpose of commercial advantage or private financial gain); (b) Reentry after Deportation, in violation of Title 8, United States Code, Sections 1326(a)(2), and as to defendant RODRIGUEZ, after a prior

removal for an aggravated felony, in violation of Title 8, United States Code, Section 1326(b)(2); and (c) As to defendant Raymond SAUNDERS, that defendant SAUNDERS knowingly aided or connived or conspired to assisted a previously removed aggravated felon to enter the United States, in violation of Title 8, United States Code, Section 1327.

## PROBABLE CAUSE

3.      On or about Wednesday, February 22, 2023, at approximately 9:10 p.m., United States Customs and Border Protection Marine Interdiction (CBP MIA) Agents while underway conducting maritime operations in the St. Lucie Inlet near Stuart, Florida in the maritime waters of the United States, and within the 3-mile limit of Martin County, and the Southern District of Florida, observed a vessel heading towards the St. Lucie Inlet waterway. As the vessel approached the inlet the vessel remained on a course that took it between the green navigation aid and the rock jetty which placed the vessel within feet of running into the rock jetty. CBP AMO followed the vessel into the inlet and positioned themselves to attempt to stop and board the vessel. Upon initiating their law enforcement emergency blue lights and sirens as well as spotlights the vessel continued making way with no change of speed. Several blasts of the siren were used to get the attention of the vessels captain in the flybridge. A second blast of the siren as well as loud verbal commands were given once more, and an individual placed their head within view and agents began asking questions as to who was on board and how many. The response from the person on the flybridge was incoherent and that individual went back into the flybridge and out of sight of the agents. Agents then conducted a swift boarding of the vessel and upon opening the main cabin door noticed a very large group of individuals hiding, and one individual in the flybridge area later identified as Carlos RODRIGUEZ.

4. After securing the vessel and steering the boat into the main channel of the St. Lucie Inlet the boarding agents located two individuals hiding within the flybridge area. One of the individuals, later identified as Raymond SAUNDERS was located within a front compartment of the vessel with packing tape around his face, thigh area and feet, but none securing his hands, writs or arms. Boarding agents asked SAUNDERS to pull himself out of the compartment, and SAUNDERS complied and came out. SAUNDERS immediately began telling the boarding agents that he was placed in restraints and forced into the cabin, however agents were suspicious of his story. Agents did not observe any physical marks or bumps on SAUNDERS, indicating a struggle as he claimed, nor were his hands bound.

5. A total of 78 foreign nationals were discovered on the vessel to include three (3) Bahamians (including defendant SAUNDERS), seventy-four (74) Haitians, and one (1) Dominican national (defendant RODRIGUEZ). Within the seventy-eight migrants there were 3 accompanied minor children as well as three un-accompanied minor children. The Martin County Sheriffs Office ferried EMT personnel out to the vessel to conduct evaluations of individuals who did not feel well. After all personnel on-board the vessel were permitted medical assistance/evaluation if needed, and the determination was made that none of the persons on board the vessel contained the proper documentation to legally enter the United States, all seventy-eight individuals were taken offshore from the St. Lucie Inlet and transferred to a United States Coast Guard Cutter. A post-removal search of the vessel found only a single personal flotation device aboard.

6. On February 23, 2022, Homeland Security Investigations (HSI) Special Agents traveled to the Coast Guard Cutter and conducted biometric checks of the seventy-two adult migrants as well as name verifications. After completion of the biometric scans two individuals

3

RODRIGUEZ and SAUNDERS were positive matches in the IDENT/IAFIS system for having been previously removed from the United States on prior occasions. On February 24, 2023, your affiant went back onboard the Coast Guard Cutter and conducted audio and video recorded post-*Miranda* interviews of RODRIGUEZ and SAUNDERS, for the limited purpose and scope of finding out how SAUNDERS got to be in the forward cabin in the flybridge with his mouth and legs taped. Both defendants were read their *Miranda* warnings using the standard HSI advise-of-rights form, and both orally acknowledged their understanding, and executed written waivers of their rights. Your affiant notes that RODRIUGUEZ spoke fluent English, was given the opportunity to use a Spanish interpreter, but stated he was comfortable proceeding in English. Post-*Miranda*, RODRIGUEZ told agents that they departed from Nassau, Bahamas on Wednesday morning and made way to the United States. RODRIGUEZ told agents that when they entered the inlet and they noticed law enforcement the "Captain" (SAUNDERS) told him it's the man the man, the police are there. SAUNDERS then told RODRIGUEZ don't call me captain anymore and grabbed his sweatshirt, a roll of packing tape and disappeared in front of the boat in a small door by the refrigerator. When asked how SAUNDERS got into the cabin area, RODRIGUEZ stated that he crawled in there on his own, and he never saw SAUNDERS, nor did he tape SAUNDERS up. RODRIGUEZ then stated that he pulled the throttles back, after which law enforcement found him and took him into custody in the flybridge.

7. While conducting the post-*Miranda* interview of SAUNDERS, SAUNDERS told your affiant that he was only going to Freeport from Nassau and when they got to the Freeport area, he wanted to get off the boat but was punched and bear hugged by the "black dude" and the Dominican, after which they taped his mouth, hands, thighs and feet together. SAUNDERS claimed they then pushed him into the forward cabin area. SAUNDERS was again asked on several

4

Riviera Beach for processing. A reinstatement of SAUNDERS prior order of removal was completed, and SAUNDERS was given a notice to appear and released from custody due to bed space issues at Krome Detention Facility. On or about September 3, 2022, SAUNDERS admitted to departing the United States, effectively legally self-deporting himself.

10.   On February 25, 2023, your affiant conducted another audio and video recorded post-*Miranda* interview of defendant RODRIGUEZ. During this more detailed interview RODRIGUEZ admitted to being offered 20-25 thousand U.S. Dollars to bring the smuggling vessel to the United States, of which he was paid $10,000 up front, and that he was to travel with SAUNDERS and another unnamed coconspirator. RODRIGUEZ told your affiant that he met SAUNDERS for the first time on Tuesday (February 21, 2023) the day before they departed, and that SAUNDERS was familiar with the route of travel and stated that he took two boats there last year. RODRIGUEZ advised he knew that they were going to smuggle people, but thought it was only going to be ten people or so, not seventy-five. RODRIGUEZ stated they departed Nassau, Bahamas in the morning hours of Wednesday (February 22, 2023), and that both he and SAUNDERS drove the vessel towards Freeport, Bahamas. Upon reaching the Freeport area SAUNDERS took back over navigating the vessel towards the United States. When asked what system they used for navigation, RODRIGUEZ stated that SAUNDERS was using the NAVIONICS application on his (SAUNDERS's) phone the whole time. RODRIGUEZ's statement concerning the time period when law enforcement approached was consistent with his prior interview on February 24, 2023, conducted by your affiant, and again he stated that SAUNDERS was not tied up and went into the forward cabin next to the refrigerator on his own.

11.   On February 25, 2023, your affiant conducted another audio and video-recorded post-*Miranda* interview of defendant SAUNDERS. SAUNDERS told your affiant that he was

asked by a man to take a vessel to Freeport, Bahamas. SAUNDERS then stated that he met the other unnamed coconspirator and RODRIGUEZ on Tuesday with the "Boss" and that he had helped move the boat around to a couple of different marinas on Tuesday. SAUNDERS told your affiant that he was paid $5,000 dollars for helping to get the boat to Freeport, and for telling RODRIGUEZ and the other unnamed coconspirator where to take the vessel into the United States. When they were about 50 miles off the coast of Freeport SAUNDERS said that RODRIGUEZ and the unnamed coconspirator refused to take him into Freeport and that they punched him and tied him up, putting him in the front (of the vessel) for 8 hours. When asked what navigation system they were using SAUNDERS stated they were using the Navionics app which he had in his phone, and he said he installed it on RODRIGUEZ's phone as well. When asked about the stop, SAUNDERS stood by his statement that he was tied up in the front by his hands, feet, thighs, and mouth. When your affiant showed SAUNDERS, the video taken by law enforcement of him using his own unbound hands to pull himself out of the compartment, he said that law enforcement used scissors to untie his hands. However, the law enforcement video recording clearly contradicted SAUNDER's statements in this regard as such depicts SAUNDERS as he emerged from the compartment under his own physical control with his hands unbound. SAUNDERS was then asked where the application NAVIONICS was on his cellular phone (which he gave consent and the password to be searched) and when he unsuccessfully tried to locate the application on his cellphone, he stated that "they" must have deleted it when law enforcement arrived.

12.   Your affiant notes that, when he asked SAUNDERS what had happened to the $5,000 SAUNDERS claimed he was supposed to be paid by the organizers, SAUNDERS responded that the money was in his shoes. This information was corroborated by a post-detention

search of SAUNDERS personal property which discovered $5,000 in Bahamian currency concealed in his shoes.

13. WHEREFORE, on the basis of the foregoing facts and information, your affiant respectfully submits that probable cause exists to charge defendants RAYMOND SAUNDERS and Carlos RODRIGUEZ-RODRIGUEZ with: (a) Knowingly having brought, or attempting to bring, unauthorized aliens to or into the United States at a place other than a designated port of entry, in violation of Title 8, United States Code, Sections 1324(a)(1)(A)(i), 1324(a)(1)(A)(v)(I)-(II), and 1324(a)(1)(B)(i)(for purpose of commercial advantage or private financial gain); (b) Reentry after Deportation, in violation of Title 8, United States Code, Sections 1326(a)(2), and as to defendant RODRIGUEZ, after a prior removal for an aggravated felony, in violation of Title 8, United States Code, Section 1326(b)(2); and (c) As to defendant Raymond SAUNDERS, that defendant SAUNDERS knowingly aided or connived or conspired to assisted a previously removed aggravated felon to enter the United States, in violation of Title 8, United States Code, Section 1327.

FURTHER YOUR AFFIANT SAYETH NAUGHT.

_____
Joshua Woodbury
Special Agent
Homeland Security Investigations

SWORN AND ATTESTED TO ME BY
APPLICANT VIA TELEPHONE (FACETIME)
PURSUANT TO FED. R. CRIM. P. 4(d) AND 4.1
THIS 27TH DAY OF FEBRUARY, 2023.

_____
HON. RYON M. McCABE
UNITED STATES MAGISTRATE JUDGE

8

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

Defendant's Name: __RAYMOND SAUNDERS__

Case No: _____23-mj-8106-RMM_____

**Count # 1**
**Alien Smuggling for Purposes of Profit or Financial Gain**
**Title 8, United States Code, Sections 1324(a)(1)(A)(i), 1324(a)(1)(A)(v)(I)-(II), and 1324(a)(1)(B)(i)**
* **Max. Term of Imprisonment:** 10 years
* **Mandatory Min. Term of Imprisonment (if applicable):** not applicable
* **Max. Supervised Release:** 3 years
* **Max. Fine:** $250,000.00
* **Special Assessment:** $100.00
* **Immigration Consequences of Removal (Deportation) from United States if Convicted**

**Count # 2**
**Reentry After Deportation**
**Title 8, United States Code, Section 1326(a)**
* **Max. Term of Imprisonment:** 2 years
* **Mandatory Min. Term of Imprisonment (if applicable):** not applicable
* **Max. Supervised Release:** 1 year
* **Max. Fine:** $250,000.00
* **Special Assessment:** $100.00
* **Immigration Consequences of Removal (Deportation) from United States if Convicted**

**Count # 3**
**Knowingly Aiding or Assisting a Previously Removed Aggravated Felon to Enter the United States**
**Title 8, United States Code, Section 1327**
* **Max. Term of Imprisonment:** 10 years
* **Mandatory Min. Term of Imprisonment (if applicable):** not applicable
* **Max. Supervised Release:** 3 years
* **Max. Fine:** $250,000.00
* **Special Assessment:** $100.00
* **Immigration Consequences of Removal (Deportation) from United States if Convicted**

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## PENALTY SHEET

**Defendant's Name:** CARLOS RODRIGUEZ-RODRIGUEZ

**Case No:** 23-mj-8106-RMM

**Count # 1**
**Alien Smuggling for Purposes of Profit or Financial Gain**
**Title 8, United States Code, Sections 1324(a)(1)(A)(i), 1324(a)(1)(A)(v)(I)-(II), and 1324(a)(1)(B)(i)**
* Max. Term of Imprisonment: 10 years
* Mandatory Min. Term of Imprisonment (if applicable): not applicable
* Max. Supervised Release: 3 years
* Max. Fine: $250,000.00
* Special Assessment: $100.00
* Immigration Consequences of Removal (Deportation) from United States if Convicted

**Count # 2**
**Reentry After Deportation (for Aggravated Felony)**
**Title 8, United States Code, Sections 1326(a) and 1326(b)(2)**
* Max. Term of Imprisonment: 20 years
* Mandatory Min. Term of Imprisonment (if applicable): not applicable
* Max. Supervised Release: 3 years
* Max. Fine: $250,000.00
* Special Assessment: $100.00
* Immigration Consequences of Removal (Deportation) from United States if Convicted

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NUMBER: 23-mj-8106-RMM

### BOND RECOMMENDATION

DEFENDANT: RAYMOND SAUNDERS

Pre-Trial Detention
(Personal Surety) (Corporate Surety) (Cash) (Pre-Trial Detention)

By: _____
AUSA: John C. McMillan

Last Known Address: _____

_____

_____

What Facility: _____

_____

Agent(s): HSI SPECIAL AGENT JOSHUA WOODBURY
(FBI)   (SECRET SERVICE)   (DEA)   (IRS) (ICE) (**OTHER**)

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NUMBER: 23-mj-8106-RMM

### BOND RECOMMENDATION

DEFENDANT: CARLOS RODRIGUEZ-RODRIGUEZ

Pre-Trial Detention

(Personal Surety) (Corporate Surety) (Cash) (Pre-Trial Detention)

By: _____
AUSA:   John C. McMillan

Last Known Address: _____

_____

_____

What Facility: _____

_____

Agent(s):   HSI SPECIAL AGENT JOSHUA WOODBURY
(FBI)   (SECRET SERVICE)   (DEA)   (IRS) (ICE) (**OTHER**)